Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2757 | **DATE** | May 16, 2002 |
| **CASE TITLE** | Berman v. Minnesota Life Ins Co | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The parties' cross-motions for summary judgment are granted in part and denied in part. SEE ATTACHED FOR DETAILS. ENTER MEMORANDUM OPINION.

Status conference is set for June 5, 2002 at 11:00 a.m.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | MAY 17 2002 date docketed | 21 |
| X | Notices MAILED by judge's staff. | docketing deputy initials | |
| | Notified counsel by telephone. | date mailed notice | |
| | Docketing to mail notices. | KAM mailing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to __________ | | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | |

(Reserved for use by the Court)

00-2757.021-JCD May 16, 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
MAY 17 2002

| | | |
|---|---|---|
| JESSICA BERMAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00 C 2757 |
| MINNESOTA LIFE INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the court are the parties' cross-motions for summary judgment. For the following reasons, both motions are granted in part and denied in part.

**BACKGROUND**

Plaintiff, Jessica Berman, brings this declaratory judgment action seeking benefits under, and reinstatement of, three insurance policies. The following facts are undisputed except where indicated.

In 1997, Berman maintained three policies of disability income insurance issued by defendant Minnesota Life Insurance Company ("Minnesota Life"). Berman paid premiums pursuant to an automatic payment plan whereby Minnesota Life initiated a charge to Berman's bank account every month. The "Automatic Payment Plan Information" document that Minnesota Life sent to Berman stated: "Please make



your withdrawal entries on the 22nd of each month." (Plaintiff's Statement of Facts, Ex. 3.) The reverse side stated: "The Company will initiate a charge to your account in the form of a check, draft, share draft or electronic debit entry on the date indicated and on the same day (or the following business day) of each month thereafter as long as this plan is in force and no premium is in default." (Id.) The policies had a 31-day grace period for the payment of premiums. The policies also had a two-year contestability period, meaning that Minnesota Life could not contest the policy for any loss incurred more than two years after the policy date, except for fraud or the nonpayment of premiums. (Id., Ex. 1, Disability Income Policies.)

Premiums for Berman's policies for the month of August 1997 were due on August 21. Minnesota Life did not initiate a charge to Berman's bank account for the premiums until August 26, at which time there were insufficient funds available in Berman's account. There had been sufficient funds in the account, however, on August 21 and 22.

In September 1997, Minnesota Life sent Berman a "Notice of Returned Check" (the "notice" or the "September notice"). The parties dispute the date the notice was sent. Defendant states that the notice was mailed on September 12 because it was dated September 12, and plaintiff states that the notice was mailed on

September 16 because it was postmarked on that date.[1] The notice indicated that Berman's bank had rejected the August deduction due to insufficient funds and that Minnesota Life was "suspend[ing]" withdrawals. The notice stated: "To restart deductions, we need the enclosed Bank Authorization completed and returned to us with a payment of $414.74 by 9-26-1997." The notice also indicated, under the heading "Option to Reinstate," "If your premium payment has not been mailed, we urge you to reinstate your policy to an active status by sending the amount needed along with the health and insurability statement. This statement must be signed, dated and returned to us by [9-26-1997]." The correspondence indicated that Minnesota Life would "restore" Berman's policy to "active status" if it received payment by September 26, Berman was still living, and she had not seen a doctor, suffered from an injury, or been sick or disabled since August 21, 1997. It further provided that if Minnesota Life declined to reinstate the policy, the "reinstatement fee will be refunded and the policy will remain lapsed," and directed Berman to return the bottom portion of the notice with payment. The bottom portion of the notice contained a health and insurability statement, which required a signature certifying that the insured had not seen a health care

---

1/ Under our view of the case, see infra, this disagreement does not create an issue of material fact.

practitioner, suffered from an injury, or been sick or disabled since August 21. (Id., Ex. 4.)

The last day of Berman's grace period was September 21, 1997. On September 24, 1997, Berman's partner, Anne Krajacic, used Berman's signature stamp to complete the health and insurability statement, and sent it by Federal Express along with payment. Krajacic was authorized to use Berman's signature stamp, but did not show the notice to Berman or discuss it with her. (Id., Ex. A, Berman Dep. at 188-91.) Krajacic typically handled the household bills and finances. (Id., Ex. A at 155; Ex. D, Krajacic Dep. at 124.) Although Krajacic knew that Berman had seen her doctor after August 21, Krajacic testified that she "didn't really read" the notice from Minnesota Life. She glanced at it, saw that Berman's signature was needed, stamped and dated it, and sent it back. (Id., Ex. D, Krajacic Dep. at 122-23.)

Minnesota Life received the payment and the health and insurability statement on September 26, 1997. Thereafter, Berman continued to make premium payments, which Minnesota Life accepted. In October 1998, Berman made a claim for disability benefits under all three policies, alleging an onset of disability on August 21, 1998 due to "severe depression with agitation." (Id., Ex. 5, Disability Claim Notice.) At that time, Berman was under the care of Dr. Gary Willer, a board-certified psychiatrist. Dr. Willer initially diagnosed major depression, single episode, severe.

Willer subsequently attributed Berman's disability to persistent post-traumatic stress disorder resulting from her fall through a manhole on May 16, 1998, and has also diagnosed her with Bipolar II disorder.

Minnesota Life conditionally approved the claim and began issuing benefits. Because Berman's claim was presented within two years of the reinstatement of her policies in September 1997 (during the contestability period), Minnesota Life performed a review of the claim file. (Defendant's Ex. D, Dep. of Cheryl Wolf, at 20-21.) On August 23, 1999, Minnesota Life informed Berman that it was ceasing benefits and rescinding the policies. According to Minnesota Life, Berman's coverage had lapsed in September 1997 due to the late payment of the August 1997 premiums, and the subsequent reinstatement constituted a new policy issuance. Because the representation on the health and insurability statement did not accurately reflect Berman's medical history (due to the fact that she had seen a doctor after August 21, 1997), Minnesota Life considered the policies void. (Id., Ex. K, Letter of August 23, 1999.)[2]

---

[2] Minnesota Life moves to strike several of plaintiff's exhibits, Exhibits 5-10, because they are not "sworn or certified." Exhibit 5 is plaintiff's disability claim form and Exhibit 7 is Minnesota Life's August 23, 1999 letter informing plaintiff that it was discontinuing her benefits. Defendant has submitted both documents in support of its motion; therefore, we do not understand why it is moving to strike them. The motion is denied as to Exhibits 5 and 7.

Exhibit 6 is an excerpt from the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) explaining the "Global Assessment of Functioning" Scale. Because we have found it unnecessary to rely on this evidence, defendant's motion regarding Exhibit 6 is denied as moot.

Plaintiff filed this action on April 7, 2000 in the Circuit Court of Cook County. Defendant removed the case to this court on May 8, 2000, based on diversity jurisdiction. Count I of plaintiff's complaint seeks a declaratory judgment that Minnesota Life is obligated to reinstate the policies and pay benefits retroactive to August 23, 1999 and in the future so long as Berman remains disabled and otherwise satisfies the terms and conditions of the policy. Count II alleges that defendant's rescission of plaintiff's coverage and refusal to pay benefits was "vexatious and unreasonable," warranting a monetary penalty and attorneys' fees under 215 ILCS 5/155.

Defendant filed a counterclaim for declaratory judgment, seeking a declaration that the policies are rescinded and that plaintiff must repay the $34,381.80 in benefits that were "erroneously paid." The parties have now filed cross-motions for summary judgment.

**DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

Exhibit 8 is a contract of employment relating to plaintiff's attempt to pursue a residency program in anesthesiology. Exhibit 9 consists of information regarding plaintiff's earnings. Plaintiff has submitted a supplemental declaration authenticating Exhibits 8 and 9; therefore, defendant's motion is denied as to those exhibits.

Exhibit 10 is the report and curriculum vitae of plaintiff's expert, John Andrews. Because we have found it unnecessary to rely on this evidence, defendant's request that Exhibit 10 be stricken is denied as moot.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**A. Policy Lapse**

Plaintiff first argues that the lapse of her policies was invalid because defendant violated Illinois law, specifically 215 ILCS 5/357.2(1), by failing to advise her that her coverage would lapse unless a premium payment was received prior to expiration of the grace period. 215 ILCS 5/357.2(1) provides in relevant part:

> Premium Notice Required. No policy of accident and health insurance . . . shall be declared forfeited or lapsed within 6 months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium . . . unless

> a written or printed notice stating the amount of such premium, . . . the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed . . . to the person insured . . . at least 15 days and not more than 45 days prior to the day when same is due and payable before the beginning of the grace period.

Plaintiff's argument is without merit because 215 ILCS 5/357.2(2) provides that "[p]aragraph (1) of this Section shall not apply to . . . any policies upon which premiums are payable monthly or at shorter intervals." Plaintiff's premiums were payable monthly. Moreover, it is not evident that 215 ILCS 5/357.2 provides a private right of action.

Plaintiff also contends that defendant breached the covenant of good faith and fair dealing implied in every contract by "knowingly misrepresenting" to Berman "relevant facts or policy provisions relating to coverages at issue." (Plaintiff's Memorandum at 9.) But the misrepresentation contained in the September notice (that Berman's policy had already lapsed) was not material because the evidence is that neither Berman nor Krajacic even read the notice, and therefore could not have relied on it. For the same reason, plaintiff's similar argument that "[a]ny reasonable person reading [the September notice] would easily be induced to delay making payment," id. at 14, fails.

We believe that denial of defendant's motion is warranted pursuant to a theory similar to one that plaintiff hints at, but does not fully develop. Plaintiff contends that, "[b]ut for"

defendant's actions, which included initiating a charge to Berman's account for the August 1997 payment later than indicated in the Automatic Payment Plan Information, there would have been no lapse. (Plaintiff's Memorandum at 10.) Defendant, on the other hand, attributes the lapse to plaintiff's "unabashed failure to pay her premiums in a timely fashion." (Defendant's Response at 7.) However, it is clear that defendant's failure to initiate a charge to Berman's account on August 21 or 22, 1997, contrary to its prior representation that it would do so, set off the chain of events that led to plaintiff's inadvertent misrepresentation in the health and insurability statement (which defendant relies upon to void the policy) and eventually to the untimely premium payment. We believe that the proximate cause of the default is the ultimate factual issue,[3] and there is no dispute that defendant's action (or, more accurately, inaction) began the chain of events.[4] Because defendant proximately caused the nonpayment of premiums, the inadvertent misrepresentation in the health and insurability statement is immaterial (and we need not consider defendant's arguments regarding recission based on the misrepresentation). We are also guided by Illinois's policy disfavoring forfeiture of

---

[3] Cf. A.W. Wendell & Sons, Inc. v. Qazi, 626 N.E.2d 280, 293 (Ill. App. Ct. 1993) (applying concept of proximate cause to a contract action).

[4] Proximate cause means any cause which, in natural or probable sequence, produced the injury complained of. It need not be "'the only cause, nor the last or nearest cause." Holton v. Memorial Hosp., 679 N.E.2d 1202, 1209 (Ill. 1997) (quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1995)).

insurance policies for nonpayment of premium. See Cullotta v. Kemper Corp., 397 N.E.2d 1372, 1376 (Ill. 1979).

Therefore, because the undisputed facts show that defendant proximately caused the late payment of premiums on plaintiff's policies, it is appropriate to deny defendant's motion for summary judgment. It is also appropriate to grant plaintiff's motion for summary judgment, but only as to defendant's counterclaim. As explained infra section B, plaintiff is not entitled to summary judgment on Count I of the complaint because she has not offered adequate proof of disability for the claim period.

**B. Evidence Regarding Disability**

The definition of "disability" differs under each of Berman's policies.

**1. Policy #1-864-600H**

"Disability" or "disabled" under Berman's policy #1-864-600H means that "due to sickness or injury [she is] unable to perform the substantial and material duties of [her] regular occupation." (Plaintiff's Statement of Facts, Ex. 1, Disability Income Policies.) The "substantial and material duties" of her occupation are "those duties which account for 50% or more of [her] prior average earned income from [her] regular occupation." The definition of "regular occupation" under the policy is "your occupation or profession, including your specialty as listed in the Specialty Endorsement attached to this policy." Berman is a

physician and the parties agree that her specialty is internal medicine. (Id.)

Plaintiff contends that her condition (Bipolar II disorder and post-traumatic stress disorder) prevents her from performing the substantial and material duties of her regular occupation. The only medical evidence plaintiff submits consists of portions of the deposition of her treating psychiatrist, Dr. Willer, who testified that Berman suffered from Bipolar II disorder and post-traumatic stress disorder and continues to suffer from those conditions. Dr. Willer also stated that he was "extremely pessimistic" about Berman's ability "ever to work in her profession again" and had "serious questions as to whether [Berman] will be able to actually function at any kind of job." (Id., Ex. E, at 103-04.) Plaintiff also submits "Attending Physician's Statement of Disability" forms, certifying Berman's disability, that Dr. Willer completed on December 3, 1998 (diagnosing severe major depression and agitation), January 21, 1999 (diagnosing same and considering Bipolar II disorder alternatively), March 19, 1999 (diagnosing Bipolar II disorder), May 4, 1999 (diagnosing same), and August 2, 1999 (diagnosing same). (Id.)

The problem with plaintiff's evidence is that it does not demonstrate that she was disabled within the terms of the policy for the entire period of August 1998 through the present. Although we do not agree with defendant that Berman's deposition testimony

"contradicts" that of Dr. Willer and thus creates a factual issue,[4] the evidence submitted by plaintiff is not sufficient to prove that she was unable to perform the substantial and material duties of her occupation as an internist and was thus "disabled" as defined by policy #1-864-600H for the entire claim period.[5]

2. **Policies #1-984-523H & #2-090-145H**

A policyholder under Berman's policy #1-984-523H has a "disability" if, because of continuing sickness or injury, that person is under the regular, reasonable care of a physician and is unable to engage in her regular occupation, or is engaged in her regular occupation but is not earning more than 85 percent of her prior average earned income from the regular occupation. A policyholder under Berman's policy #2-090-145H has a "disability" if she is under the regular, reasonable care of a physician and is unable to engage in her regular occupation, or is engaged in her regular occupation but is not earning more than 85 percent of her prior average earned income, and is not earning more than 85 percent of her prior average earned income from any occupation. (Id.)

As with the first policy, plaintiff has not submitted sufficient evidence showing that she was disabled under these

---

4/ Berman testified in her deposition simply that she was looking for part-time work as an internist and expressed doubts about her ability to work full-time.

5/ For example, plaintiff does not submit evidence describing an internist's substantial and material duties.

policies. The evidence does not indicate whether she has been under Dr. Willer's care throughout the entire period of her claim. As for her earnings, plaintiff submits some evidence of her earnings during the claim period, but does not show what her "prior average earned income" was under the policies, and thus whether her earnings during the claim period were 85 percent of that amount or less. Plaintiff's motion for summary judgment is denied as to Count I of the complaint.

C. **"Vexatious and Unreasonable"**

Count II of plaintiff's complaint is a claim under 215 ILCS 5/155, which provides an extra-contractual remedy for policyholders whose insurer's refusal to recognize liability or pay a claim under a policy is vexatious and unreasonable. Plaintiff argues that defendant's actions were vexatious and unreasonable because there was a "flimsy and disingenuous basis" for defendant to have claimed a policy lapse. (Plaintiff's Memorandum at 13.) We disagree. There is no genuine issue that plaintiff did not pay premiums on her policies by the end of her grace period. This default was the basis for Minnesota Life's position that the policy had lapsed, and there is no evidence that Minnesota Life's position was anything but bona fide. Where a bona fide dispute concerning coverage exists, costs and sanctions under 215 ILCS 5/155 are inappropriate. See State Farm Mut. Auto. Ins. Co. v. Smith, 757 N.E.2d 881, 887 (Ill. 2001). Although defendant's argument regarding lapse is

ultimately unsuccessful, that is no basis for finding that its conduct was vexatious and unreasonable. See McGee v. State Farm Fire & Cas. Co., 734 N.E.2d 144, 151 (Ill. App. Ct. 2000) (215 ILCS 5/155 is not violated merely because an insurance company is unsuccessful in contesting the scope of coverage or the magnitude of the loss). Accordingly, Minnesota Life is entitled to summary judgment on Count II of the complaint.

**CONCLUSION**

For the foregoing reasons, the parties' motions for summary judgment are granted in part and denied in part. Plaintiff's motion is granted, but only as to defendant's counterclaim; the motion is denied as to plaintiff's claims. Defendant's motion is granted as to Count II of the complaint and denied as to Count I of the complaint and defendant's counterclaim.

DATE: May 16, 2002

ENTER:

John F. Grady, United States District Judge